**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**SAN ANTONIO DIVISION**

| | | |
|---|---|---|
| **I.A., b/n/f KAYE RHODABECK,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **VS.** | ) | **Civil Action No.  SA-10-CA-0866-XR** |
| | ) | |
| **SEGUIN INDEPENDENT SCHOOL** | ) | |
| **DISTRICT,** | ) | |
| | ) | |
| **Defendant.** | ) | |
| | ) | |

**ORDER ON MOTION FOR SUMMARY JUDGMENT**

On this date, the Court considered Defendant's Motion for Summary Judgment (docket no. 56), Plaintiff's Response, and Defendant's Reply.  For the reasons stated below, Defendant's motion is GRANTED.

**Factual and Procedural Background**

Plaintiff I.A. is a young boy who was enrolled as a student in the Seguin Independent School District.  When I.A. was six years old, he was injured in an automobile accident that severely damaged his spinal column and caused paraplegia.  As a result of the accident, I.A. uses a wheelchair for mobility.  Defendant Seguin Independent School District ("Seguin") is an independent public school district organized under the laws of Texas.  I.A. was enrolled in Seguin from third grade until the beginning of eighth grade, from approximately August 2006 to October 2011.  During his time in Seguin, I.A. qualified for and received aid and services under section 504 of the Rehabilitation Act ("§ 504").  While in Seguin, I.A. achieved passing grades and advanced through each grade

level.  However, he alleges that the District discriminated against him in certain respects during his time there, in violation of the Americans with Disabilities Act and § 504.

The facts of the case are largely undisputed.  Before attending Seguin, I.A. was enrolled in the Austin Independent School District, where he was evaluated and determined to be eligible for § 504 services.  When I.A. began school in Seguin in third grade, Seguin followed AISD's Accommodation Plan for the remainder of the 2006 school year, and convened a committee at the end of that year to design a new plan for the next year.

Plaintiff did not have an accessible desk during third and fourth grade, and was instead provided a table, which did not always provide an adequate view of the teacher and lacked a place to store I.A.'s supplies.  During I.A.'s fifth-grade year, in the Fall of 2008, his class was scheduled to take a field trip to Natural Bridge Caverns as part of the fifth-grade Earth Science Texas Essential Knowledge and Skills (TEKS) curriculum.  Seguin wanted I.A. to attend the field trip even though I.A. would not be able to enter the caverns with the rest of the class.  Ms. Kaye Rhodabeck,[1] I.A.'s grandmother and legal guardian with regard to school matters, urged Seguin to cancel the trip entirely.  Although there is evidence that the science teacher developed a specialized hands-on experience for I.A. to engage in while the other students explored the cave, his guardian testified that she was not adequately informed of this experience, and elected instead to take I.A. to Carlsbad Caverns in New Mexico, which were wheelchair accessible.  As a result, I.A. did not attend the field trip.  Ms. Rhodabeck further testified that there were issues with I.A.'s toileting needs, as he frequently missed classroom instruction time when attending to these needs, causing his teachers

---

[1] The plaintiff's filings spell this name variously as "Rhodebeck" and "Rhodabeck." The defendant has indicated that the correct spelling is "Rhodabeck;" and the Court has adopted this spelling.

frustration.

In 2009, I.A. began attending a new school in the Seguin district, the Saegert Sixth Grade Center. At Saegert, the physical education (P.E.) class allowed students to participate in intramural sports (including swimming), specialized programs at the Seguin Outdoor Learning Center (SOLC), and a fitness program. I.A.'s lawsuit contends that he was discriminated against by being excluded from the swimming unit and by being inappropriately accommodated in other aspects of the P.E. program. I.A. missed the first swimming class because there was not a bus equipped with a wheelchair lift available to transport him, and as a result he was sent to the computer lab during the swimming period. Ms. Rhodabeck testified that I.A. missed the second class at the gym teacher's direction because he was unsure how to keep I.A. safe in the water. In response, Saegert's principal, Don Hastings, did arrange for transportation, and also asked Ms. Rhodabeck to have I.A.'s physician complete a form describing what medical issues might preclude him from participating in swimming and other P.E. activities. This form bore the caption "Medical Excuse from Physical Education." Because of this caption, Ms. Rhodabeck thought the form was intended to exclude I.A. from P.E., and she refused to sign it. Ms. Rhodabeck asked Mr. Hastings to come up with a different form, but he did not do so. Ms. Rhodabeck did not fill out the form, and I.A. was unable to participate in swimming with the other students.

In addition to the field trip and swimming incidents, I.A. also complains of other incident during sixth grade. First, in another P.E. class, I.A. was precluded from playing floor hockey by a substitute teacher, who was concerned that I.A. might injure other players and was unaware that I.A. could safely participate. Second, when I.A. attended a ropes course with his peers at the SOLC, his wheelchair tipped forward while he was navigating the mulch trail to the ropes course. I.A.'s

wheelchair is equipped with a seatbelt, but there was a problem with the wheelchair seatbelt, necessitating an alternative harness. In any event, when the school official grabbed I.A.'s chair to pull him back upright, this alternative harness cut painfully into I.A.'s abdomen. I.A. sought medical attention due to the pain. Further, in November 2009, I.A. arrived at a band concert, and when Ms. Rhodabeck inquired of the band director how I.A. would get onto the stage, it became clear that the band director had not considered how to accommodate I.A.'s disability when planning the concert location. At I.A.'s request, Ms. Rhodabeck took him from the venue after it was suggested that I.A. play from the floor in front of the stage. It was later discovered that the facility had a ramp to reach the stage, but the band teacher was unaware of the ramp and appropriate arrangements had not been made.

In addition to these specific incidents, Ms. Rhodabeck also complains about general accessibility problems around the Saegert campus. Ms. Rhodabeck claims that I.A. did not have sufficient access to certain student bathrooms; that he had no access to bathrooms for the after-school program; that his desks were inappropriate; that there are cracks and a steep driveway on a route to a building that created mobility problems for I.A.; that there are no curb cuts at the entrance to the building; that there is no reserved space for a school bus carrying a student with a disability; that there is only one wheelchair ramp to the sidewalk, which was often blocked; that the playgrounds and tennis courts are inaccessible; and that there are accessibility problems with the athletic stadium.

Last, Plaintiff complains that the District failed to develop a transition plan or mobility assessment when I.A. was promoted to sixth grade at the new location and that the District failed to develop an adaptive P.E. program until two months into his sixth-grade year. Ms. Rhodabeck and Seguin officials met in October 2009 to address the asserted problems. Unfortunately, this did not

resolve the issues to Ms. Rhodabeck's satisfaction, and as a result Ms. Rhodabeck sought an impartial § 504 due process hearing in May 2010.

In July 2010, the § 504 hearing officer issued his report. Overall, the hearing officer concluded that there was no evidence that Seguin had acted intentionally or in bad faith in its accommodation of I.A., and he also noted that the teaching staff had the genuine heart to help and assist I.A. However, the hearing officer did find that Seguin had failed to properly accommodate I.A. on three separate occasions and ordered additional training and compensatory services to address these and any similar failings in the future. First, the hearing officer found that Seguin had failed to properly accommodate I.A. with regard to the swimming unit in P.E. The hearing officer determined that Seguin took timely and reasonable action to remedy this failure, but that the form Mr. Hastings gave Ms. Rhodabeck, entitled "Medical Excuse from Physical Education," was was not the proper vehicle for the physical capabilities evaluation the school needed and was sufficiently confusing to warrant relief on this claim. Second, the hearing officer determined that Seguin had failed to provide reasonable access to the floor hockey game. However, the hearing officer also found that the matter was promptly investigated and that I.A. had access to all other P.E. events. Finally, the hearing officer held that Seguin failed to accommodate I.A. when it did not provide him with stage access for the band concert, because the venue had a ramp but it was not utilized. The hearing officer concluded that the evidence tended to show that this was just an oversight due to poor planning.

Ms. Rhodabeck, as legal guardian and next friend of I.A., filed I.A.'s Original Complaint against Seguin on October 27, 2010. I.A. sued Seguin for violations of § 504 of the Rehabilitation Act and later added a claim under Title II of the ADA. I.A. also requested attorney's fees incurred in the § 504 hearing. The parties agree that I.A. is a qualified individual with a disability for

purposes of both his ADA claim and his § 504 claim. Seguin filed the instant motion for summary judgment on May 17, 2012. The Court has already found that I.A. is not entitled to recover attorney's fees, so this order will address only the ADA claim and the § 504 claim.

## Standard of Review

Summary judgment is proper when the evidence shows "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). Although the evidence is viewed in the light most favorable to the nonmoving party, a nonmovant may not rely on "conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence" to create a genuine issue of material fact sufficient to survive summary judgment. *Freeman v. Tex. Dep't of Criminal Justice*, 369 F.3d 854, 860 (5th Cir. 2004).[2]

## Analysis

Title II of the ADA and section 504 of the Rehabilitation Act both prohibit discrimination against qualified individuals with disabilities. Title II of the ADA focuses on disability discrimination in the provision of public services. The relevant part of Title II of the ADA provides:

> [N]o qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity.

42 U.S.C. § 12132. Section 504 of the Rehabilitation Act prohibits disability discrimination by recipients of federal funding. Section 504 provides:

> No otherwise qualified individual with a disability in the United States . . . shall,

---

[2] The Court notes that Plaintiff has attached 696 pages of exhibits to the Response, yet cites primarily to only one exhibit, the deposition of Kaye Rhodabeck, as evidence in support of the ADA and § 504 claims. The Court has no obligation to sift through the voluminous attachments in search of evidence, and thus, unless otherwise noted, the Court has not considered evidence that has not been specifically cited by Plaintiff.

solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance . . . .

29 U.S.C. § 794.

Courts, including the Fifth Circuit, have recognized a private right of action for violations of Title II of the ADA and § 504. *See, e.g.*, *Frame v. City of Arlington*, 657 F.3d 215 (5th Cir. 2011) ("It is established that Title II of the ADA and § 504 of the Rehabilitation Act are enforceable through an implied private right of action."). To prove a violation under Title II of the ADA, a plaintiff must show that: (1) that he is a qualified individual within the meaning of the ADA; (2) that he was excluded from participation in or denied the benefits of services, programs, or activities for which a public entity is responsible, or was otherwise subjected to discrimination by the public entity; and (3) such exclusion, denial of benefits, or discrimination was by reason of the plaintiff's disability. *Melton v. Dallas Area Rapid Transit*, 391 F.3d 669, 671-72 (5th Cir. 2004). To recover monetary damages, a plaintiff must prove that the discrimination was intentional. *Delano–Pyle v. Victoria County*, 302 F.3d 567, 574 (5th Cir. 2002). Courts use similar liability standards in interpreting claims under the ADA and § 504. *See D.A. v. Houston Indep. Sch. Dist.*, 629 F.3d 450, 453 (5th Cir. 2010) ("Because this court has equated liability standards under § 504 and the ADA, we evaluate D.A.'s claims under the statutes together.") (citations omitted).[3]

Seguin contends that, "to proceed on either claim, Plaintiff must also demonstrate that the complained-about actor engaged in bad faith or gross misjudgment." Motion for SJ at 4. In *D.A. v. Houston Independent School District*, the Fifth Circuit considered the interplay among the ADA,

---

[3] Section 504 has the additional requirement that the entity be a recipient of federal funds, but that requirement is met in this case and is not in dispute.

§ 504, and the Individuals with Disabilities in Education Act ("IDEA").  D.A. brought claims under all three statutes, and the Court noted that "while IDEA imposes an affirmative obligation on states to assure disabled children a free appropriate public education, *see, e.g.*, 20 U.S.C. § 1412( l), § 504 and the ADA broadly prohibit discrimination against disabled persons."  *Id.* at 453.[4]  The district court lawsuit in D.A. was filed to challenge the rejection of D.A.'s IDEA claim by the administrative hearing officer, but the lawsuit relied only on the ADA and § 504 claims. *Id.* at 453 n.1.  The district court granted summary judgment on those claims, and the plaintiff appealed, contending that the district court erroneously heightened the burden of proof under these acts.  Thus, the question presented for the Fifth Circuit was "what remedies remain under § 504 and the ADA for children whose parents are dissatisfied with the school's determinations under IDEA" and what standard governed for the § 504 and ADA claims in those circumstances. *Id.* at 454.

The Court noted its long-established rule that a claim under § 504 "requires intentional discrimination against a student on the basis of his disability" and concluded that this rule "is consistent with courts that have held that to establish a claim for disability discrimination, in this educational context, 'something more than a mere failure to provide the 'free appropriate education' required by [IDEA] must be shown.'" *Id.*  After discussing those other courts' decisions, the Fifth Circuit "concur[red] that facts creating an inference of professional bad faith or gross misjudgment are necessary to substantiate a cause of action for intentional discrimination under § 504 or ADA against a school district predicated on a disagreement over compliance with IDEA." *Id.* at 455.

As noted by Seguin, "I.A. was evaluated and determined to be ineligible for special education

---

[4]As part of its broad mandate against discrimination, § 504 also requires schools to provide a "free appropriate public education," but defines such an education somewhat differently from IDEA.  *See* 34 C.F.R. § 104.33.

under IDEA, but continued to receive regular education and related aids and services under Section 504." Motion for SJ at 5 n.6. Further, "[t]he evaluation and eligibility determination have never been contested, nor has any administrative hearing been requested under the IDEA" and "Plaintiff does not assert that the present case involves any claim under the IDEA." *Id.* Despite the fact that the claims in this case are not "predicated on a disagreement over compliance with IDEA," Seguin contends that the "gross misjudgment and bad faith" standard nevertheless applies to all the ADA and § 504 claims because they arise in the education context.

Plaintiff, on the other hand, contends that "if a claim [is] based upon whether or not the educators departed grossly from accepted standards among educational professionals, then the Section 504 claim must be analyzed under a 'bad faith or gross misjudgment' standard" and that "[w]here the acts or omissions are not based upon a professional judgement, but rather an exacting standard set by law or rule, then the correct standard of review is whether or not such acts or omissions were intentional." Response at ¶ 73. Thus, Plaintiff breaks down his claims under § 504 as those involving professional judgment, and his claims under the ADA as those involving physical accessibility issues. Because the Court can resolve the motion for summary judgment under I.A.'s asserted standards without deciding whether the gross misjudgment or bad faith standard applies to all of I.A.'s claims (including his ADA claims related to physical accessibility concerns), the Court will analyze I.A.'s claims under his proposed standards.

I.      **I.A.'s ADA claims premised on physical accessibility concerns**

I.A. contends that "I.A. was a victim of discrimination in the following manners:  the 6th Grade Center's student bathrooms were not accessible for I.A. (Ex. I, p.79, l. 5-21); there was not an accessible bathroom provided in the after-school program (Ex. I, p. 134, l. 13-25); his desks were

inaccessible (Ex. I, p. 135, l. 14-18); the route to one of his main buildings for class had numerous cracks in the sidewalks making those walkways inaccessible and dangerous, and was up a steep driveway (Ex. I, p. 98 l. 14-25; p. 99 l.1-9 ); the entrance to the 6th grade learning center had no curb cuts (Ex. I p. 99, l. 1-3); there were no curb cuts along the Mountain Street South side of the building (Id.); there was no reserved space for a school bus carrying a student with a disability (Ex. I p. 141, l. 23-25; p. 142, l. 1-21); there was only one wheelchair ramp to the sidewalk from the driveway which was often blocked (Ex. I p. 142, l. 19-25); some of the playgrounds were inaccessible playgrounds (Ex. I p. 144, l. 1-14); the tennis court was inaccessible (Id.); and the athletic stadium had significant accessibility problems with parking, seating, ticket booths and signage (Ex. I p. 145, l. 3-23). Because of the problems with an inaccessible pathway, I.A. also had to take an indirect route and fell a few times. (Ex. I p. 100, l. 4-18)." Response at ¶ 79.

Plaintiff relies on *Delano-Pyle v. Victoria County, Texas*, 302 F.3d 567, 575 (5th Cir. 2002), to support his ADA claims. In that case, the Fifth Circuit affirmed a jury finding of discrimination based on a police officer's complete failure to accommodate the plaintiff's hearing impairment during a traffic stop, despite knowing of the impairment and the significant problems it was creating during the encounter. Plaintiff contends that, if such a single incidence of failure to accommodate can amount to deliberate indifference, then all of the cumulative failures on the part of Seguin ISD at least raise an inference of deliberate discrimination.

Plaintiff's reliance on *Delano-Pyle* is misplaced. Plaintiff's ADA claims are based on alleged physical accessibility deficiencies, while *Delano-Pyle* involved a complete failure to accommodate by a police officer interacting with a disabled individual. Title II "requires public entities 'to take reasonable measures to remove architectural and other barriers to accessibility,'" and

the regulations impose different requirements based on whether facilities were built or altered after 1992. *See Frame*, 657 F.3d at 232. Seguin contends that the Saegert Sixth Grade Center was built prior to 1992, such that the regulations require barrier removal or renovations only to the extent that those actions are required to make the program, when viewed in its entirety, readily accessible to and usable by individuals with disabilities. Motion for SJ at 24 n.19.

Seguin contends that there is no evidence to suggest that I.A. was unable to access the facilities at Saegert (or any other District facility), but instead that the evidence shows that I.A. was able to navigate the campus (Ex. 4, ¶ 14; Ex. 6A, pp. 138-147; Ex. 6B, pp. 35-38.); that I.A. used the nurse's office for his catherization/restroom needs, but that there were also other restroom facilities that were accessible to I.A. (Ex. 1A, 15-16; Ex. 4, ¶ 14; Ex. 6C, p. 6.); that I.A. preferred to address his hygiene issues in the privacy available to him in the nurse's office and further preferred to keep his catherization supplies at that location, and the District endeavored to accommodate this (Ex. 1A, 15-16; Ex. 4, ¶ 14; Ex. 6C, p. 6.)[5]; that the District provided I.A. with a table, rather than a traditional desk, to accommodate his wheelchair, which was consistent with the accommodations he had received under his Accommodations Plans for Seguin ISD and Austin ISD in elementary school (Ex. 1A, pp. 3, 6, 8, 10, 16; Ex. 6A, pp. 38-40, pp. 42-45, pp. 135-136; Ex. 6C, p. 6.), but when the District became aware that the tables no longer met I.A.'s needs, it provided him with new ones, fit for his use, which were transferred with him to the other campus he subsequently attended while at Seguin ISD (Ex. 4, ¶ 5; Ex. 4F, pp. 1-2; Ex. 6A, pp. 135-136, 180; Ex. 6C, p. 6.).[6]

---

[5] I.A. testified that he was told not to use the other bathrooms because they did not have doors on the stalls.

[6] Seguin asserts that the use of a table was an accommodation in use prior to I.A.'s attendance at Seguin ISD and continued while he was in enrolled in elementary school (Ex. 1A, pp. 3, 6, 8, 10.

Seguin further asserts that: the § 504 committee meeting minutes do not reflect that I.A. or his guardian (his grandmother who attended all the meetings) ever expressed a concern about his ability to access any facilities other than those related to his physical education class, and the District provided modifications to I.A. so that he was able to participate in the P.E. class activities (Ex. 1A, pp. 1-24; Ex. 4, ¶ 13; Ex. 2, ¶ 5; Ex. 6A, p. 175; Ex. 6C, p.6.); that school officials also observed I.A. while at District facilities, but none observed that any District facility had a negative impact on I.A.'s education, attendance, or ability to navigate the campus (Ex. 4, ¶ 12.); and that I.A. and his grandmother also conceded that none of the issues she raised about Saegert had precluded I.A. from going to school and receiving the benefits of Seguin ISD's educational services (Ex. 6A, pp. 136-137, p. 138-147; Ex. 6B, pp. 35-38).

Plaintiff's Response states that Plaintiff generally does not dispute the facts as presented by the District; the disagreement is primarily over the legal effect of these facts. Plaintiff's evidence in support of his claims consists primarily of the deposition testimony of Kaye Rhodabeck.

---

16; Ex. 6A, pp. 38-40, pp. 42-45) and that it was not until his sixth-grade year that I.A.'s grandmother expressed a desire to change I.A.'s workspace accommodation from a table to a desk (Ex. 4H). The District notes that, before that year, she had never filed a grievance or demanded any changes regarding his desks at § 504 meetings. (Ex. 1A, pp. 1-24; Ex. 1B; Ex. 6A, p.67). Further, the District provides evidence that when the question arose about how best to address I.A.'s classroom needs, Principal Hastings ordered evaluations and assessments to explore ways that the District could better serve I.A. in the classroom, which ultimately became the basis for I.A.'s new accommodation plan in November 2009 (Ex. 4, ¶¶ 4-5; Ex. 4C, pp.1-5; Ex. 4D, pp.3-17; Ex. 4F, pp. 3-8; Ex. 4G; Ex. 6A). After reviewing that information, new desks were purchased and placed in I.A.'s classrooms with adjustments made for I.A.'s recommended height (Ex. 4, ¶ 5; Ex. 4F, pp. 1-2Ex. 6C, p. 3).

Ms. Rhodabeck testified that she expressed dissatisfaction over the use of a table in I.A.'s third-grade classroom because I.A. was not facing the teacher, and that she raised the issue again in fourth grade because there was no place for I.A. to put his supplies, and his supplies were often lost. Ms. Rhodabeck testified that she raised her concern with the teachers and in fourth grade with the Principal, but that nothing was done.

Although Plaintiff's expert also lists the same alleged accessibility problems, it is clear from his report that he is simply "taking as true" the allegations in the Complaint, and has not done any independent examination of the facilities to determine whether they comply with the ADA.

Plaintiff's evidence is insufficient to create a material fact issue on intentional discrimination. With regard to the desks, it is undisputed that I.A. was given a table to use because the desks were not wheelchair accessible. Thus, the use of the tables was itself an attempted accommodation, and Seguin was not refusing to accommodate I.A. The fact that it was not, in Ms. Rhodabeck's view, the best accommodation and that it had certain shortcomings does not establish intentional discrimination. Nor does it appear that Ms. Rhodabeck proposed a better reasonable accommodation other than expressing dissatisfaction with the tables. She did attempt to address the concern of I.A.'s losing supplies by buying containers, but she testified that this was not successful in preventing the loss of I.A.'s supplies. Ultimately, once Ms. Rhodabeck obtained an advocate and was able to more effectively communicate the problems and work toward possible solutions, the District responded by providing better desks for I.A. The District's attempts to accommodate I.A., even if imperfect, establish a lack of intentional discrimination.

With regard to facilities issues, Plaintiff again fails to raise a fact issue on intentional discrimination. There is no evidence that the facilities violated the ADAAG guidelines or that the ADAAG guidelines even applied. Nor is there evidence that the facilities violated the less stringent "readily accessible" standard for existing structures.[7] "[P]rogram accessibility is ultimately a

---

[7] Ms. Rhodabeck asserted that certain restrooms, though marked as wheelchair accessible were "not accessible," but there is no evidence to support how specifically they were not accessible. Based on a review of the record, it appears they were accessible but lacked privacy for I.A. to catheterize because the stalls lacked doors. There is no evidence that Ms. Rhodabeck or I.A. ever asked Seguin to address this issue such as by putting doors on the stalls, and there is no evidence of

subjective determination by viewing the program or activity at issue in its entirety and not solely by evaluating individual elements of the facility where the program is held." *Greer v. Richardson Indep. Sch. Dist.*, __ F.3d __, ___ (5th Cir. 2012). Plaintiff fails to establish a material fact issue that the school and its educational programs were not readily accessible. Even considering individual issues with the facility, Plaintiff fails to demonstrate that she requested any particular modifications to the facilities, such as the addition of curb cuts or repairing of sidewalks to eliminate cracks. Undoubtedly these accessibility issues created inconveniences for I.A. that were highly frustrating, but they do not establish intentional discrimination. For these reasons, summary judgment is granted against I.A.'s ADA intentional discrimination/damages claim.

## II.    section 504 claims

Plaintiff alleges that Seguin is liable under § 504 for bad faith and gross misjudgment[8] with regard to: (1) the handling of the fieldtrip to the caverns; (2) the handling of the swimming module; (3) the handling of the band concert; (4) his math teacher embarrasing him in class when asking him why he needed to go the bathroom; (5) failing to have a transition plan in Spring 2009 for the Fall semester (beginning of sixth grade), and no timely mobility orientation plan or Adaptive P.E. plan for Fall 2009; (6) failure to have an evacuation plan in place in the Fall of 2009; (7) no accessible desk until after November 9, 2009; (8) missing class time because of toileting needs; (8) lack of § 504 training. Seguin moves for summary judgment on I.A.'s § 504 claims, arguing that I.A. has

---

a failure to accommodate with regard to I.A.'s toileting needs.

[8] Although Plaintiff differentiates his claims under separate "bad faith" and "gross misjudgment" standards, the Court will analyze them together. For the reasons stated in the analysis of the ADA claims, the Court finds no bad faith or gross misjudgment with regard to the § 504 claims related to I.A.'s desks.

failed to create issues of material fact with regard to (1) whether I.A. was excluded from or denied the benefits of services or activities, or otherwise discriminated against, and (2) whether Seguin acted in bad faith or exercised gross misjudgment.

A.   **whether I.A. has created an issue of material fact with regard to whether he was excluded from or denied the benefits of services, programs, or activities, or whether he was otherwise discriminated against by Seguin**

Seguin contends that I.A. has failed to create an issue of material fact with regard to whether he was excluded from or denied the benefits of services, programs, or activities or was otherwise discriminated against by Seguin.

1.   **field trip to Natural Bridge Caverns**

Title II imposes an "obligation to accommodate," or a "reasonable modification requirement." *Frame*, 657 F.3d at 231.  Seguin planned this field trip to complement its TEKS science curriculum, and sought to *include* I.A. by having him attend the field trip.  Although it was unfortunate that I.A. would not be able to enter the caves because they are not wheelchair accessible, Seguin was not required to cancel the field trip as requested.  *See Tennessee v. Lane*, 541 U.S. 509, 532 (2004) (Title II requires only "reasonable modifications" that would not fundamentally alter the nature of the service provided).  Nor was Seguin required to carry I.A. into the caverns in an effort to include him.  Although videotaping could have helped to include I.A. in the cave experience, there is no indication that this was proposed at the time of the field trip or would have been permitted, and even if it was, the failure to videotape the experience does not amount to exclusion from the program or discrimination.

Although the cave was not accessible to I.A., Seguin made reasonable accommodations to ensure that I.A. would be able to participate in the field trip as much as possible.  Specifically,

-15-

Seguin considered moving the field trip to an accessible site, as Ms. Rhodabeck requested, but concluded that there were no other accessible caves nearby.[9]  Further, Seguin came up with several alternative activities for I.A. that would enable him to learn the same information as his peers.[10]  Seguin reasonably accommodated I.A. by including him to the extent possible and by coming up with alternative activities for him.  I.A. has failed to present an issue of material fact with regard to whether the field trip was exclusionary or discriminatory, and summary judgment is granted on this claim.

> ### 2.    the mulch trail incident

I.A. has not presented evidence sufficient to show an issue of material fact regarding whether the incident in which his wheelchair fell over while he was navigating the mulch trail on the way to Saegert's ropes course was an instance of exclusion or discrimination.  Instead, this incident appears to have been merely an unfortunate accident that occurred while school officials were attempting to include I.A. in school activities.  I.A. has not presented any evidence showing that the difficulty with his wheelchair's seatbelt, or the necessity of using an alternative method of securing him, were

_____

[9] Plaintiff's expert summarily asserts that there were other accessible caverns, but does not state where these accessible caverns are.  There is no evidence of accessible caverns close enough to the school for a field trip.  The Court notes that, in a commendable effort to provide I.A. with a similar, wheelchair-accessible cave experience, Ms. Rhodabeck drove all the way to Carlsbad Caverns in New Mexico.

[10] *See D.A.*, 629 F.3d at 455. ("D.A.'s mere disagreement with the correctness of the educational services rendered to him does not state a claim for disability discrimination.") (citation omitted).  The Court further concludes that Seguin did not demonstrate bad faith or gross misjudgment in its handling of the field trip.  The District offered evidence that the science specialist came up with an alternative hands-on experience for I.A. while his classmates were in the cave.  Ms. Rhodabeck contends that these alternative plans were not communicated to her before the trip.  If that is true, it is unfortunate, but it does not rise to the level of bad faith or gross misjudgment.  It is at most negligence.

attempts to exclude him or were anything more than simple mistakes or confusion.  Indeed, Seguin has demonstrated that the parties had discussed the trip to the ropes course in one of I.A.'s § 504 meetings and that Seguin officials had worked with I.A. in an effort to enable him to participate in the ropes course.  The fact that the ropes course was accessible by a mulch trail that was not easily navigated by wheelchair is again unfortunate, but the fact that they attempted to navigate the mulch trail and the fact that a school official picked I.A. up in such a way as to unintentionally injure him do not raise a fact issue as to whether he was excluded or denied participation or was otherwise discriminated against.[11]

Plaintiff's expert contends that the incident could have been avoided if the District had performed an evaluation of I.A.'s functionality in his wheelchair or assessed his wheelchair, which would have demonstrated that the mulch trail was unsuitable "for the safe and stable operation of I.A.'s wheelchair."  Nevertheless, the District was making a good-faith effort to include I.A. in the field trip, and there is no evidence that any evaluation would have avoided I.A.'s injury other than by excluding I.A. from participation in the outing, which is contrary to § 504's goal of inclusion.  Although the inclusion was perhaps not executed in the best and safest way possible, the evidence does not demonstrate a violation of § 504 insofar as I.A. was not excluded or denied participation, nor was he otherwise discriminated against.[12]

**B.      whether Seguin acted in bad faith or exercised gross misjudgment**

Seguin contends that I.A. has not presented sufficient evidence to create an issue of material

---

[11] If the Court were to reach the issue of bad faith/gross misjudgment, it would also find this to be an issue of negligence and not bad faith or gross misjudgment.

[12]  The Court notes that Plaintiff seeks medical expenses for this injury, but Ms. Rhodabeck testified that it was paid for by Medicaid.

fact with regard to whether Seguin acted in bad faith or exercised gross misjudgment.  Proving bad faith or gross misjudgment requires I.A. to show that Seguin departed grossly from accepted standards among education professionals.  *See id.* at 455. Mere disagreement with the correctness of the educational services rendered does not state a claim for disability discrimination. *Id.*

It is not entirely clear within the Fifth Circuit when an educator's actions will constitute bad faith or gross misjudgment. The standard was not met when school officials delayed a special education test for two months in the hopes that a disciplinary strategy would prove effective. *D.A.*, 629 F.3d at 455. In *D.A.*, as in this case, the dispute was between a student and school officials; and in *D.A.*, as in this case, the dispute went to a hearing officer before going to court. *Id.* In *D.A.* the court, in finding that the school officials had not acted in bad faith or exercised gross misjudgment, relied on the hearing officer's determination that the school official's actions were "well intended." *Id.*  The court also found that the fact that the school district eventually authorized a special education test, despite the two-month delay, was indicative of misjudgment at most, rather than bad faith.  *Id.*

I.A.'s allegations of bad faith and gross misjudgment can be grouped into two categories: (1) those allegations pertaining to instances in which I.A. was excluded from a school activity or made to feel embarrassed in class; and (2) other allegations pertaining to Seguin's failure to have various adequate plans in place on time.

### 1. instances in which I.A. was excluded from participation or made to feel embarrassed

I.A. alleges that Seguin violated § 504 in its handling of I.A.'s participation in the swimming unit, when he was not permitted to play floor hockey by the substitute P.E. teacher, and when the

band director failed to ensure that I.A. could access the stage for a band concert and suggested he play from the floor in front of the stage. However, I.A. has failed to present evidence sufficient to show that any of these exclusions were done in bad faith or with gross misjudgment.

On the contrary, the evidence tends to show that Seguin consistently made an effort to accommodate I.A.'s various needs. Some of the problems arose from a negligent lack of prior planning, such as the band director failing to ensure that the concert venue would be wheelchair accessible and the failure to provide accessible bus transportation on the first day of swimming. The band director did not exhibit bad faith or gross misjudgment in negligently failing to make arrangements for I.A. to perform on stage or in suggesting that I.A. play from the floor in front of the stage, even if I.A. was understandably unhappy with this proposal.

The floor hockey and swimming incidents were the result of District personnel's concerns over the safety of I.A. and others in the P.E. activities. Seguin officials can impose legitimate safety requirements for the safe operation of their P.E. activities. *Cf.* 28 C.F.R. § 35.130 ("[a] public entity may impose legitimate safety requirements necessary for the safe operation of its services, programs, or activities"). Plaintiff's evidence does not raise a fact issue that Seguin officials imposed these requirements in bad faith or otherwise exercised gross misjudgment. With regard to swimming, Plaintiff's evidence is Ms. Rhodabeck's assertion that I.A. was a proficient swimmer and that there was no need for concern. However, even if this is true and I.A. could swim, this evidence fails to raise a fact issue as to whether Seguin officials had legitimate safety concerns about I.A.'s participation and whether their request for medical authorization before permitting him to swim was legitimate. While Ms. Rhodabeck was clearly dissatisfied with the form provided by Principal Hastings and his failure to give her the correct form when she requested it, the Court cannot say that

the evidence is sufficient to create a fact issue concerning whether Seguin officials acted in bad faith or exercised gross misjudgment.

Nor is there evidence that the substitute teacher acted in bad faith or with gross misjudgment in excluding I.A. from floor hockey based on safety concerns. Similarly, although perhaps insensitive, evidence concerning I.A.'s teacher asking him about his bathroom needs in class fails to create a fact issue on bad faith or gross misjudgment.

The impartial hearing officer in this case found that Mr. Hastings and other members of the teaching staff at Saegert all had the "genuine heart to help and assist I.A." As I.A. and school personnel were faced with new situations and challenges, school personnel attempted to deal with them in good faith. Evaluating these incidents in context, there is no evidence that these occurrences were gross departures from acceptable standards among education professionals. Although mistakes may have been made, they do not rise to the level of bad faith or gross misjudgment.

> **2.    whether Seguin's delays and failure to implement various accommodation plans for I.A. constituted bad faith or gross misjudgment**

I.A. complains of Seguin's failure to implement a transition plan, a timely mobility plan, a timely Adaptive Physical Education (APE) plan, or a timely evacuation plan. Most of I.A.'s difficulties occurred when he began sixth grade at the Saegert facility and was faced with a number of new challenges and situations there. Although Seguin does not appear to have held a formal transition meeting, the  evidence shows that staff from the elementary school and the sixth grade center did communicate regarding at least some of I.A.'s needs. Although Seguin concedes that there was a delay in providing an APE assessment, it appears that part of the reason for the delay was because Ms. Rhodabeck did not provide the requested form and was not able to attend a meeting

earlier.

In the same vein, Seguin's failure to have an evacuation plan in place prior to October of 2009 was due, at least in part, to Ms. Rhodabeck's refusal to schedule a § 504 meeting until mid-October. Indeed, as soon as that meeting took place an evacuation plan suitable for I.A. was implemented. Moreover, there is no evidence that I.A. suffered any harm from the delay in establishing an evacuation plan.

Although earlier evaluations and planning would have been beneficial and perhaps avoided some of the problems I.A. encountered, Plaintiff provides no evidence that the delays were caused by bad faith or gross misjudgment.[13]  Further, as suggested in *D.A.*, a delay in taking certain measures does not necessarily amount to bad faith when those measures are later implemented.  The evidence does not create a fact issue on bad faith or gross misjudgment.  For these reasons, summary judgment is granted against I.A.'s § 504 claims.

### Conclusion

The Court finds that I.A. has failed to raise a fact issue with regard to his ADA and § 504 claims.  Accordingly, Seguin's motion (docket no. 56) is GRANTED.  Defendant's request for an award of attorney's fees (contained within docket no. 56) is DENIED.

---

[13] Importantly, Plaintiff points to no professional standards or regulations that were violated. Plaintiff's expert report contains the conclusory statement that "Plaintiffs contend that Defendant failed to convene a meeting, as pursuant to Section 504 FAPE and non-discrimination requirements, to learn about IA's disability-related needs and develop accommodations to enable his access to the educational program reasonably equivalent to the access available to students without disabilities." Jan. 27, 2012 Hollis report at 2.  However, this establishes no more than the fact that no evaluation was done and/or that no meeting was held.   Even if this was a violation of a rule or regulation, of which there is no evidence, there is also no evidence that this was a gross departure from accepted standards.  Rather, this appears to have been negligence or oversight, which the District attempted to remedy once it was made aware of the need for such assessments.

As noted by Seguin, Plaintiff's Exhibit 4D contains information about the minor plaintiff that should have been redacted.  The Clerk is directed to seal this exhibit.

The Court need not rule on Defendant's Motion to Exclude Expert Testimony (docket no. 57) because, even considering the expert report, Defendant is entitled to summary judgment.[14] Finally, Plaintiff's opposed motion to mediate (docket no. 68 ) is DENIED.

It is therefore ORDERED that Plaintiff take nothing by his claims, that his claims be DISMISSED WITH PREJUDICE, and that Defendant be awarded its costs of court.  The Clerk shall issue a separate judgment in accordance with Rule 58.

It is so ORDERED.

SIGNED this 24th day of July, 2012.

_____
XAVIER RODRIGUEZ
UNITED STATES DISTRICT JUDGE

---

[14] The Court notes, however, as does Seguin, that the report contains a number of factual misstatements and errors.